653 So.2d 89 (1995)
Lawrence TRAHAN and Marie Trahan, Plaintiffs-Appellants
v.
Dr. Robert McMANUS and St. Paul Fire and Marine Insurance Company, Defendants-Appellees.
No. 94-167.
Court of Appeal of Louisiana, Third Circuit.
March 22, 1995.
Writ Denied June 2, 1995.
*90 J. Minos Simon, Lafayette, for Lawrence and Marie Trahan.
Nicholas Joseph Sigur, Lafayette, for Dr. Robert McManus and St. Paul Fire & Marine.
Before LABORDE, SAUNDERS, WOODARD and DECUIR, JJ., and GUIDRY, J. Pro Tem.[1]
SAUNDERS, Judge.
The principal issue is whether the father and mother of an adult married child negligently discharged from the hospital by his treating physician may recover damages under LSA-C.C. art. 2315.6 for their allegedly debilitating mental anguish and emotional distress resulting from his death, when only the mother was with her son at the time of his discharge.
The trial court granted exceptions of no cause and no right of action filed by defendants with respect to the claims of both parents. Both parents appeal. We reverse finding that, for different reasons, both parents witnessed the injury, thus stating viable claims.

FACTS
On August 17, 1991, plaintiffs' adult son, Terry Joseph Trahan, was admitted to the emergency room at American Legion Hospital in Crowley, Louisiana, for treatment of injuries sustained in an automobile accident. After reviewing the wrong medical chart, Dr. Robert McManus, the emergency room physician, erroneously discharged the decedent, Terry Trahan. Terry Trahan died a few hours later in the home and presence of both parents, appellants herein, from multiple internal injuries. That Dr. McManus negligently discharged Terry Trahan is conceded.
On appeal, plaintiffs-appellants maintain that LSA-C.C. art. 2315.6 affords them legal bases of relief under the facts of this case. In any event, the parents argue that the payment by defendants of $100,000.00 to other alleged victims[2] precluded the Patient's Compensation Fund from now exonerating itself from liability as to them. Finally, plaintiffs argue that the "law of the case" doctrine precluded the exceptions forming the basis of this appeal because they are largely identical to others previously rejected below, additionally warranting imposition of sanctions.
Defendants counter that LSA-C.C. art. 2315.6 is not intended to offer relief for the parents of an adult like the decedent when he is additionally survived by a spouse and children. Alternatively, they maintain that the provision is designed to provide relief for family members who witness a cataclysm, not an act of passive negligence; because neither parent witnessed the son's traffic accident, they reason, the parents are entitled to no recovery. Second, defendants contend that their payment of $100,000.00 to the spouse and dependents of decedent constituted an admission under LSA-40:1299.44(C)(5) as to those claims only, not to appellants' claims. Finally, as to the "law of the case" issue, defendants note that, at a minimum, their failure to contest the trial court's action overruling their first exception should be forgiven due to the unsettled nature of the question of whether an exception once overruled cannot be reasserted.

OPINION
Defendants' Peremptory Exceptions:
"Pleadings must be construed reasonably so as to afford litigants their day in court, to arrive at the truth, and to do substantial justice. La.C.C.P. art. 865.

*91 Teachers' Retirement System v. Louisiana State Employees' Retirement System, 456 So.2d 594 (La.1984); Haskins v. Clary, 346 So.2d 193 (La.1977); Hero Lands Co. v. Texaco, Inc., 310 So.2d 93 (La.1975). When it can reasonably do so, the court should maintain a petition against a peremptory exception so as to afford the litigant an opportunity to present his evidence. Teachers' Retirement System v. Louisiana State Employees' Retirement System, supra; Henson v. St. Paul Fire and Marine Insurance Co., 363 So.2d 711 (La.1978). The purpose of an exception of no cause of action is to determine the sufficiency in law of the petition and is triable on the face of the papers; for the purpose of determining the issues raised by this exception, the well pleaded facts in the petition and any annexed documents must be accepted as true. Mayer v. Valentine Sugars, Inc., 444 So.2d 618 (La. 1984); Darville v. Texaco, Inc., 447 So.2d 473 (La.1984); Eschete v. City of New Orleans, 258 La. 133, 245 So.2d 383 (1971)."
Kuebler v. Martin, 578 So.2d 113, 114 (La. 1991).
The exception of no right of action, on the other hand, is a threshold device that questions whether the litigant, who sets forth a cause of action, has any interest in enforcing judicially the right asserted. Lambert v. Donald G. Lambert Const. Co., 370 So.2d 1254, 1255 (La.1979); Meche v. Arceneaux, 460 So.2d 89, 90 (La.App.3d Cir.1984); LSA-C.C.P. arts. 681 and 927. In other words, can the legal remedy afforded by law be invoked by this particular plaintiff? Mayers v. Altmann, 594 So.2d 6, 8 (La.App. 3d Cir.1992).
The relevant facts are not disputed. Rather, this dispute calls into question the intentions of the legislature in enacting LSA-C.C. art. 2315.6 and the rules used to examine that question.
"When a law is clear and unambiguous and its application does not lead to absurd consequences, the law shall be applied as written without further interpretation in search of the intent of the legislature. LSA-C.C. art. 9; Hutchinson v. Patel, 637 So.2d 415 (La.1994). However, when the language of the law is ambiguous or susceptible of two reasonable interpretations, it must be interpreted as having the meaning that best conforms to the purpose of the law. LSA-C.C. art. 10; Hutchinson, supra, at 420; Touchard v. Williams, 617 So.2d 885, 888 (La.1993). The meaning is sought by examining the context in which the words occur and the text of the law as a whole. LSA-C.C. art. 12."
In re: C.B., Applying for Adoption, 94-C-0755 (La. 10/17/94); 643 So.2d 1251.
Plaintiffs argue that the trial court erred in granting defendants' exceptions of no cause and no right of action. The substantive law upon which defendants' exceptions were sustained is set forth below:
Art. 2315.6. Liability for damages caused by injury to another
A. The following persons who view an event causing injury to another person, or who come upon the scene of the event soon thereafter, may recover damages for mental anguish or emotional distress that they suffer as a result of the other person's injury:
(1) The spouse, child or children, and grandchild or grandchildren of the injured person, or either the spouse, the child or children, or the grandchild or grandchildren of the injured person.

(2) The father and mother of the injured person, or either of them.
(3) The brothers and sisters of the injured person or any of them.
(4) The grandfather and grandmother of the injured person, or either of them.
B. To recover for mental anguish or emotional distress under this Article, the injured person must suffer such harm that one can reasonably expect a person in the claimant's position to suffer serious mental anguish or emotional distress from the experience, and the claimant's mental anguish or emotional distress must be severe, debilitating, and foreseeable. Damages suffered as a result of mental anguish or emotional distress for injury to another *92 shall be recovered only in accordance with this Article. (Emphasis added.)
LSA-C.C. art. 2315.6.
We find that LSA-C.C. art. 2315.6's remedies are available to parents, notwithstanding the presence of other aggrieved family members for whom the law's protection is also intended. The provisions is explicitly designed to benefits them among others, LSA-C.C. art. 2315.6(A)(2), and in no way limits recovery to decedent's spouse and children to whom defendant owed an independent duty. See Crabtree v. State Farm Ins. Co., 632 So.2d 736, 741, n. 11 (La.1994). Indeed, had the legislature chosen to limit the classes of beneficiaries in hierarchical fashion, as it has for survival and wrongful death actions, it could have explicitly done so. Compare LSA-C.C. arts. 2315.1 and 2315.2.
The greater question presented by this controversy is whether, under the circumstances, the parents can be said to have complied with LSA-C.C. art. 2315.6(A): that is, did they "view an event causing injury to another person, or ... come upon the scene of the event soon thereafter"?
To state a cause of action under LSA-C.C. art. 2315.6, a party must have the requisite temporal and geographical nexus as set forth in 2315.6(A). The law does not require that the event be sudden or dramatic. Rather than limit the reach of LSA-C.C. art. 2315.6 to only catastrophic or precipitous events, the law instead uses other parameters, rendering the nature of the event per se largely[3] immaterial.
In this case, because the "event causing injury" was the physician's admittedly negligent discharge of the decedent, there can be no question that the mother is among the classes for whom LSA-C.C. art. 2315.6(A) was intended. After all, she viewed her son's negligent discharge, and that, according to all of the parties, is the event that caused his injury. We reject defendant's contention that the mother cannot recover under LSA-C.C. art. 2315.6 solely on the basis of her not having witnessed the auto accident which landed her son in the hospital. Because she alleges severe and debilitating anguish caused by witnessing her son's discharge, Ms. Trahan clearly has stated a cause of action under LSA-C.C. art. 2315.6(B).
Next we turn to the exception of no cause of action filed as to the father's case. The mere fact that a duty exists does not mean that it extends to everyone against every risk all of the time. Lejeune v. Rayne Branch Hosp., 556 So.2d 559, 569, (La.1990), citing PPG Industries, Inc. v. Bean Dredging, 447 So.2d 1058 (La.1984); Hill v. Lundin and Associates, Inc., 260 La. 542, 256 So.2d 620 (1972). The question is whether the father too has stated a cause of action.
Although the claim of the father is somewhat different, we feel he also has stated a cause of action under LSA-C.C. 2315.6. We hold that the father, who did not merely learn of the accident from others, Cf., Chamberlain v. State, Through DOTD, 624 So.2d 874, 877 (La.1993); Thibodeau v. Mayor and Councilmen, 619 So.2d 595, 598-99 (La.App. 1st Cir.), writs granted and made peremptory as to quantum, denied otherwise, 629 So.2d 362 (La.1993), too has stated an actionable claim for the reasons expressed in note 3, supra, and accompanying text. This is because we see no basis for distinguishing the claim of a grief-stricken mother who viewed the "event causing injury," from that of a father upon whom the continuing event was visited almost instantaneously; for he too is a listed beneficiary of LSA-C.C. art. 2315.6(A)(2) and like the mother, was compelled by a force of nature recognized and endorsed by the law of this state, LSA-C.C. art. 227,[4] to witness the final seven hours of his son's life as it dimmed, flickered, then expired.
*93 Judicial Confession:
Plaintiffs contend that defendants' settlement with the children and spouse of the decedent prevents their contesting the liability issues as to them. They rely on LSA-R.S. 40:1299.44(C)(5):
Sec. 1299.44. Patient's compensation fund

. . . .
C. If the insurer of a health care provider or a self-insured health care provider has agreed to settle its liability on a claim against its insured and claimant is demanding an amount in excess thereof from the patient's compensation fund for a complete and final release, then the following procedure must be followed:

. . . .
(5) At the hearing the board, the claimant, and the insurer of the health care provider or the self-insured health care provider as the case may be, may introduce relevant evidence to enable the court to determine whether or not the petition should be approved if it is submitted on agreement without objections. If the board, the insurer of the health care provider or the self-insured health care provider as the case may be, and the claimant cannot agree on the amount, if any, to be paid out of the patient's compensation fund, then the court shall determine the amount of claimant's damages, if any, in excess of the amount already paid by the insurer of the health care provider. The court shall determine the amount for which the fund is liable and render a finding and judgment accordingly. In approving a settlement or determining the amount, if any, to be paid from the patient's compensation fund, the court shall consider the liability of the health care provider as admitted and established where the insurer has paid its policy limits of one hundred thousand dollars, or where the self-insured health care provider has paid one provider has paid one hundred thousand dollars.

. . . .
(Emphasis added.)
The question is whether defendants' tender to the children and spouse of the decedent, which unquestionably precludes the Patient's Compensation Fund from contesting liability as to their claims, Stuka v. Fleming, 561 So.2d 1371 (La.1990), likewise constitutes an admission of liability as to the parents, appellants herein. We conclude that it does not, because the parents' claim arose from a separately derived duty that requires of them a greater showing, distress that is severe, debilitating, and foreseeable. LSA-C.C. art. 2315.6(B); Lejeune, supra, at 568-69. Because no tender was made as to decedent's parents' claim arising under the provision, LSA-R.S. 40:1299.44(C)(5), Stuka, supra, and the other cases cited by appellants, Koslowski v. Sanchez, 576 So.2d 470 (La. 1991), and Kelty v. Brumfield, 534 So.2d 1331 (La.App. 4th Cir.1988), writ denied, 536 So.2d 1221, 1222 (La.1989), are inapplicable.
Sanctions:
Finally, appellants maintain that the trial court erred in failing to award sanctions against defendants. Their first argument relies on the premise that defendants could not contest liability as to them due to their previous settlement with the children and spouse of decedent, a ground rejected by us above. Their alternate theory resides in the "law of the case" doctrine.
According to appellants, the exceptions forming the basis of the present appeal had already been urged and rejected. Because defendants subsequently filed very similar exceptions, they maintain that sanctions and attorney's fees are warranted. After comparing the two pleadings, we cannot say that the trial court erred in its conclusion.
The "law of the case" principle is not to be applied so hypertechnically as to run roughshod over the rights of litigants. See generally, LSA-C.C.P. art. 5051. Rather, it is applied merely as a discretionary guide, and not barred "in cases of palpable former error or so mechanically as to accomplish manifest injustice. Further the law-of-the-case principle is not applied so as to prevent a higher court from examining the correctness of the ruling of the previous court." Day v. Campbell-Grosjean Roofing and Sh. *94 Metal Corp., 260 La. 325, 256 So.2d 105, 107 (1971) (emphasis added) (notes omitted).[5]

DECREE
For the foregoing reasons, the judgment granting defendants' exceptions is reversed and plaintiffs' claims against defendants are remanded for a trial on the merits. Costs of this appeal taxed to defendants. Other costs to be held in abeyance.
REVERSED AND REMANDED.
GUIDRY, J. Pro Tem., dissents and assigns reasons.
E.L. GUIDRY, Jr., Judge Pro Tempore, dissenting.
I would affirm the trial court's judgment dismissing plaintiffs' demands.
La.C.C. art. 2315.6 not only requires that the claimant view the injury causing event, or come upon the scene soon thereafter, but such event must be a traumatic event causing such harm to the victim that one could reasonably expect that the claimant, who views such event and the injuries inflicted upon the victim, would suffer serious mental anguish or emotional distress from the viewed experience. In this case, the event causing Terry's death was his negligent discharge from the emergency room. This event could not reasonably be expected to generate any mental anguish or emotional distress upon either of the claimants. Apparently, the majority concludes that the event causing injury need not be sudden or dramatic and that, irrespective of the drama involved, if the claimant views the event he/she is entitled to recovery. In the instant case, the victim's father did not view the negligent event but is allowed recovery, presumably on the basis that he came upon the scene soon thereafter. I cannot agree with this conclusion.
In sum, I would affirm the trial court's judgment. Terry's negligent discharge from the hospital did not cause claimants any mental anguish. Rather, it was Terry's death, several hours later at their home, which caused their severe emotional distress. The provisions of La.C.C. art. 2315.6 do not permit recovery by claimants under such circumstances.
For these reasons, I respectfully dissent.
NOTES
[1] Judge E.L. Guidry, Jr., Retired, participated in this opinion by appointment of the Louisiana Supreme Court.
[2] The procedural history of the parents' claims is intertwined with those of decedent's widow and children. Six weeks after the parents' suit was filed, the parents filed an ex parte motion to consolidate their proceeding with the other, which was signed by the judge. When the spouse and children of the decedent learned the defendants intended to produce evidence of parental sex abuse by decedent, allegedly directed toward one or more of his children, the parents sought to uncouple the consolidated actions. Their Motion to Deconsolidate was granted November 19, 1993, the date of the judgment sustaining defendants' exceptions of no right and/or no cause of action.
[3] Presumably, the nature of the accident causing event will be quite significant to the trier of fact called to evaluate not only whether the victim indeed suffered severe, debilitating and foreseeable mental anguish, but additionally whether a person in the victim's position could reasonably have been expected to suffer mental anguish or emotional distress under the circumstances.
[4] Art. 227. Parental support and education of children

Fathers and mothers, by the very act of marrying, contract together the obligation of supporting, maintaining, and educating their children.
[5] Additionally, arguably the two exceptions are not quite identical. The first "dilatory" exception of no cause of action contesting appellants' ability to claim damages under LSA-C.C. art. 2315.6 was raised on the basis of their allegation that the decedent "died a few hours later in the plaintiffs' home and in the plaintiffs' presence...." No reference was made to the decedent's discharge to his mother's care. The "dilatory" exception of no right and/or no cause of action forming the basis of this appeal was filed several months later and is broader.